UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES C. MCWHORTER    )
                                  )
                                  )     No. 3:17-cv-00637
v.                             )     JUDGE TRAUGER
                                  )
UNITED STATES OF AMERICA    )
                                  )

## <u>RESPONSE TO MOTION FOR RELIEF UNDER 28 U.S.C. § 2255</u>

       The United States of America, by and through S. Carran Daughtrey, Assistant United States Attorney for the Middle District of Tennessee, hereby responds to petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Petitioner's motion is based on a claim of ineffective assistance of counsel by Assistant Federal Public Defender Michael Holley, who represented James C. McWhorter in the underlying criminal case in which McWhorter was charged with escape while serving a sentence on a fraud conviction.  The United States respectfully requests that this Court deny petitioner's motion for the reasons stated below.

## <u>Statement of Facts</u>

       On November 8, 2006, petitioner James C. McWhorter was arrested on multiple counts of production of false documents, conspiracy to produce false documents, possession of false identification documents, possession of false document making implements, and aggravated identity theft. McWhorter was found to be in possession of 345 counterfeit Tennessee and Florida driver's licenses and more than 500 counterfeit commercial bank checks, among other false document making devices and instruments. Law enforcement officers determined that McWhorter, along with other defendants, had passed, uttered, and cashed hundreds of counterfeit payroll checks at numerous businesses during the course of the conspiracy, with an actual loss of

1

$128,383.55 and an intended loss of $246,448.44. Petitioner was convicted by a jury and sentenced to 124 months of custody to be followed by three years of supervised release. The Bureau of Prisons released McWhorter early to Diersen Charities, a residential reentry center in Nashville, Tennessee, to serve the remaining few months of his sentence. Case # 3:16-cr-00162, PSR at ¶ 26 (hereinafter "PSR").

While at Diersen Charities, petitioner apparently worked as a paralegal for various attorneys in the Nashville area, through a business set up specifically for petitioner by his friends, known as Strategic 1 Company (hereinafter "Strategic 1"). Case # 3:16-cr-00162, D.E. 34: Sentencing Hearing Transcript (hereinafter "SHTR") at 13-14. Strategic 1 paid for an office space and had a bank account. SHTR at 14. Although petitioner alleged that additional members of the halfway house were employed through Strategic 1, the receptionist of the office building identified petitioner as the only person associated with Strategic 1, and no other employees were paid from the bank account. SHTR at 30.

On September 8, 2015, petitioner left Diersen Charities for work and did not return as required. Petitioner claims that he had been having breakfast with his best friend, Eugene Nesbitt, on the morning of September 8, 2015, when both petitioner and Nesbitt were shot at but not injured. After the shooting, petitioner apparently fled to Baltimore, Maryland with Nesbitt, claiming to have panicked after the shooting. McWhorter stated that Nesbitt was later killed after Nesbitt went to meet someone to discuss making fraudulent documents. Approximately three days later, petitioner and his girlfriend moved to South Bend Indiana. PSR at ¶ 46.

On November 25, 2015, approximately 2½ months after leaving Nashville, petitioner cashed a payroll check from Strategic 1 dated November 23, 2015, in the amount of $1,459.96, in Indiana. PSR at ¶ 37; SHTR at 30. Petitioner was arrested six months later, on May 26, 2016, in

South Bend, Indiana for "check deception" for cashing the fraudulent payroll check on November 25, 2015. While Check Smart confirms that petitioner provided identification and the check was "verified" according to company procedures, the check ultimately was rejected and Check Smart has not recovered the funds. PSR at ¶ 37. When Check Smart employees and investigating officers attempted to contact Strategic 1 to obtain the funds, their calls were not returned. SHTR at 31.

At the sentencing hearing on petitioner's escape charge, the Court referenced the petitioner's having "attempted to pass [the check] months after he left the halfway house" and later stated that McWhorter had been caught and arrested in Indiana when he cashed the check that was about six months old on the shell company. SHTR at 18, 57. The Court ultimately imposed sentencing of eight months in custody, a downward variance from the guideline range of 12 to 18 months. SHTR at 61; PSR at 23. In determining the appropriate sentence, the Court considered several factors: petitioner pled guilty and accepted responsibility for escaping from the halfway house; petitioner's escape showed "disrespect and a lack of trust in the judicial system"; petitioner's claim of legitimate work placement and future job opportunities did not match up with being shot at and fleeing the city; and petitioner fled from custody and was a fugitive for nine months until he was apprehended on another fraud charge. SHTR at 54 - 56. Additionally, the Court stated it was unlikely that Strategic 1 was a real company and that combined with petitioner's numerous charges of fraud on his criminal history, it was difficult to believe his attempt to cash a check in Indiana from the shell company located in Tennessee, months after escaping, was not also a fraudulent act. SHTR at 57.

The Court also took in to consideration petitioner's current Hepatitis C status, and the potential that delayed medical treatment, due to incarceration, could result in both cirrhosis of the liver or liver cancer. Therefore, the Court reasoned that a lower-than-guideline-range sentence was

appropriate. SHTR at 61. Furthermore, the Court stated that while sensitive to petitioner's Hepatitis C diagnosis, it would not allow a condition brought on by his own illegal behavior to "trump everything else." SHTR at 59.

Petitioner now claims that his counsel, Michael Holley, was ineffective for failing to object to misinformation regarding the issue and cash date of the alleged fraudulent check in Indiana being "six months prior" or "six months old," when in reality, the check was two days old. [1] D.E. 2: Memorandum in Support of Petition, at 1. Additionally, petitioner claims Mr. Holley was ineffective for not objecting to misinformation regarding discussion of the details of petitioner's arrest in Indiana being *while* petitioner was attempted to pass the check and not *after* petitioner attempted to pass the check. Id. Furthermore, petitioner claims that he is entitled to resentencing for his current medical condition. D.E. 2: Memorandum in Support of Petition, at 9-10.

### Evidentiary Hearing

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the 2255 motion and the record of the case conclusively show that he is not entitled to relief. *See Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995). Finally, "when the trial judge also hears the collateral proceedings, as [is] the case here, that judge may rely on his recollections of the trial in ruling on the collateral attack." *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Wherefore, the United States submits that an evidentiary hearing in this case

---

[1] McWhorter alleges that the United States alleged that he had been arrested cashing a six-month-old check. D.E. 1: Petition, at 1. In fact, during the sentencing hearing, counsel for the United States stated as follows: "I think Your Honor was very astute in looking at the check and noticing that it's being issued on November 23 of 2016, which is two and a half months after he left the Diersen Charities and he's trying to cash it two days later." SHTR at 30. Nor did the United States make such an allegation in its sentencing memorandum. See Case # 3:16-cr-00162, D.E. 21: United States' Sentencing Memorandum.

is unnecessary because the petition, files, records, and sentencing hearing transcript conclusively show that petitioner is not entitled to the requested relief.

<u>Argument</u>

**I.     Applicable Law Regarding Motions Under 28 U.S.C. § 2255 Alleging Ineffective Assistance Of Counsel.**

To prevail on a Section 2255 motion, a petitioner must establish either an error of constitutional magnitude that had a substantial effect or influence on his criminal proceeding, *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). Thus, a motion brought under 18 U.S.C. § 2255 must allege one of three bases as a threshold standard: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006).

With regard to an ineffective assistance-of-counsel claim, a petitioner bears the burden of establishing that his counsel did, in fact, provide ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test petitioner must pass before meeting his burden:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction .

. . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Moreover, the ultimate burden is on a defendant to show that his counsel's performance resulted in any *actual* breakdown of the adversarial process so as to deprive a defendant of a fair proceeding. *United States v. Cronic*, 466 U.S. 648, 656-57 (1984).

Additionally, the Sixth Circuit has held that errors in sentencing are rarely grounds for collateral relief:

> [N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system. Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process.

*Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994).

## II. McWhorter Has Failed To Carry His Burden Of Establishing An Ineffective Assistance Of Counsel Claim.

McWhorter has failed to carry his burden under both prongs of *Strickland*. First, McWhorter has not shown that Mr. Holley's assistance was deficient. Second, even had McWhorter shown that Mr. Holley's assistance was deficient, he has not shown that Mr. Holley's performance prejudiced his defense. Petitioner is, therefore, not entitled to the requested relief.

### A. Mr. Holley's Assistance Was Not Deficient.

Under the first prong of *Strickland,* "the defendant must show that counsel's performance was deficient." 466 U.S at 687. The Supreme Court has held that judicial scrutiny of counsel's performance must be highly deferential and that reviewing courts should avoid "second-guessing" strategic decisions that proved unsuccessful. *Id.* at 688-89. Effectiveness of assistance is judged

under an objective reasonableness standard, and to show that counsel's performance was deficient, a defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Mr. Holley's failure to object to the date regarding when the check was issued or cashed, as well as the specific details of the arrest, was reasonable considering all the circumstances, and Petitioner has, therefore, failed to carry his burden.

Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. To this end, the *Strickland* Court held that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687-88. The Court declined to provide specific guidelines for determining the effectiveness of assistance, and instead held that effectiveness of counsel must be judged by the reasonableness of counsel's assistance considering all the circumstances of a particular case:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690. The Court emphasized that a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance is necessary to account for the difficulties inherent to performing a fair evaluation of counsel's performance: "[E]very effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

In the present case, Mr. Holley meticulously raised numerous issues, on petitioner's behalf, during the Sentencing Hearing. *See* SHTR at, Dec. 16, 2016. Mr. Holley ensured that any documents containing petitioner's personal information would be sealed, and that the Court knew petitioner's old equipment, used to make fraudulent identifications and checks, was made available for pick up after his previous conviction, and petitioner told his lawyer to destroy it. SHTR at 5, 10 – 11. Additionally, Mr. Holley addressed concerns about the shell company, Strategic 1 Company, where petitioner was working when he was at the halfway house and from which he cashed a payroll check, vouching for its legitimacy. SHTR at 12- 15. Moreover, Mr. Holley addressed concerns with alleged misinformation given to a prosecutor in Indiana, from a U.S. Marshal, when petitioner was arrested on a Check Deception charge in Indiana on May 27, 2016. SHTR at 18-19. Specifically, Mr. Holley stated that there was no official evidence the check was fraudulent, and no official evidence for why these Indiana charges were dropped. SHTR at 34-35.

Furthermore, Mr. Holley raised concerns about petitioner's Hepatitis C status, stating that McWhorter had difficulty getting access to health care upon being released to the halfway house and that he would be unable to get access to health care if incarcerated. SHTR at 20-21. Additionally, Mr. Holley conveyed petitioner's post-release plan and potential for employment with attorneys looking for paralegal work. SHTR at 26. Despite the numerous issues raised in the sentencing hearing, however, petitioner alleges that Mr. Holley was "ineffective for failing to object to the use of erroneous information" in two ways: (1) when the Court and United States referred to petitioner's most recent arrest as being made when petitioner was *passing* an allegedly fraudulent check, and (2) when the Court and United States referred to a six-month gap between

the check issue and cash date, when it was dated just two days before petitioner cashed the check.[2]

D.E. 2: Memorandum in Support of Petition, at 1, 4.

In analyzing an ineffective assistance of counsel claim, strategic choices and subjective motivations for raising or disregarding certain issues are not dispositive. In fact,

> There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.

*Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citation omitted); *see also Kuhl v. United States,* 370 F.2d 20 (9th Cir. 1966) (cautioning, in a pre-*Strickland* ruling, against consideration of counsel's testimony in habeas proceedings, because hearing such testimony places counsel "in the unenviable position where, if he can recall his reasons, and they are good, he is hurting his former client, and if he can't recall his reasons or they are bad, or not very good, he is impugning his professional competence").   In the instant case, Mr. Holley focused on the validity of Strategic Company 1, the alleged false information given by a U.S. Marshal to the Indiana prosecutor, and petitioner's health. Here, Mr. Holley appeared to have focused on the points he felt most important. Thus, even if a different strategy may have been more successful, it is merely hindsight. Furthermore, excluding certain issues, like the date of the check or specific details of the arrest, and bringing forth numerous other issues, shows trial tactics, rather than "sheer neglect."

The relevant inquiry is simply whether the challenged decision "might be considered *sound* trial strategy," based upon an objective reasonableness standard.  *Strickland,* 466 U.S. at 689.  That is, Mr. Holley's subjective motivations are not relevant under *Strickland*'s objective

---

[2] See, supra, footnote 1.

reasonableness test. *Id.* Petitioner claims that Mr. Holley's mistake was carelessness rather than by design D.E. 2: Memorandum in Support of Petition, at 3. Petitioner states that Mr. Holley was unable to explain why he did not object to the date of the check or specific details of the arrest. D.E. 2: Memorandum in Support of Petition, at 3. During the Sentencing Hearing, the Court first stated that petitioner "attempted to pass [the check] months after he left the halfway house," which is an accurate characterization of the over two-month gap between the date petitioner escaped the halfway house, and the date petitioner cashed the check in Indiana. SHTR at 18. The Court later used the term "six month gap" or "six months after," with regard to the check, but continued to explain that the reason the arrest mattered at all was because the Court had "a lot of skepticism about [Strategic 1]" and did not feel the attorney for whom the petitioner worked knew "he was violating the rules of the halfway house by setting up a shell corporation." SHTR at 57. The Court later referred to the check date by saying "a check that is, what, six months old[?]" further showing that the date of the check was not a particularly important fact. Rather, the Court seemed concerned that the check might have been fraudulent. SHTR at 57. Additionally, although the Court noted that petitioner was arrested "when he trie[d] to cash a check," the emphasis, again, was not on the date of the arrest or potential six-month gap but on the Court's disbelief that the shell corporation was real and that petitioner probably knew the check was fraudulent. SHTR at 57.

Mr. Holley's decision not to raise the issues was objectively reasonable, because the information, however erroneous it may have been in reference to specific dates or circumstances, was not the focus of the Court's determination. *See Harrington,* at 688 (holding that "the defendant must show that counsel's representation fell below an *objective* standard of reasonableness") (emphasis added). Furthermore, even if Mr. Holley's raising the issue of the date and details of the arrest may have strengthened the defense position slightly, petitioner has failed to overcome

the "strong presumption that [Mr. Holley]'s conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In fact, the Court recognized and commended Mr. Holley's advocacy on the record. SHTR at 63. The Court stated that "Mr. Holley . . . always does an excellent job on his cases," and in regard to his representation of McWhorter specifically, the Court pronounced that Mr. Holley "went above and beyond . . . did an excellent job, and [the Court] hopes [petitioner] appreciates [Mr. Holley's] hard work." SHTR at 63.

As the Supreme Court noted in *Strickland*, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* The Supreme Court emphasized that highly deferential review of counsel's assistance is not only necessary to engage in a fair assessment of counsel's conduct, but also concomitant with the guarantees of the Sixth Amendment: "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." *Id.* There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689-90 (citations omitted).

That Mr. Holley's representation of petitioner might have improved slightly had he raised objections to the Court's incorrect characterization of the check's issue date and details of the Indiana arrest, is therefore not the relevant inquiry. *See id.* Rather, the relevant question, under the deficiency prong of *Strickland,* is whether Mr. Holley's decision not to make these corrections was objectively reasonable. *Id.* at 689. The fact there was a two and a half month gap between the escape and the issuance of the check, and that petitioner was arrested six months *after* and not

*while* he tried to pass an alleged fraudulent check, was unlikely to overcome the issues presented by the United States. *See* Part II(B), *infra.* Therefore, Mr. Holley's decision not to raise these two relatively small issues was objectively reasonable in light of his other numerous issues that were the cornerstone of his defense strategy. As such, petitioner has failed to overcome his burden under *Strickland.*

### B. Mr. Holley's Performance Did Not Prejudice McWhorter's Defense Because the Proceeding Achieved Just Results.

Under the second prong of *Strickland,* "the defendant must show that the deficient performance prejudiced the defense." 466 U.S at 687. In establishing prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. Rather, the prejudice prong of *Strickland* should be read in light of the goals of the adversarial process, *i.e.,* the achievement of just results. *Kimmelman v. Morrison,* 477 U.S. 365, 395 (1986) (suggesting that "only errors that call into question the basic justice of the defendant's conviction suffice to establish prejudice under *Strickland*") (concurring opinion). The reference to a "just result" requires more than simply looking to whether, but for counsel's deficient performance, a different result would have been reached. *Lockhart v. Fretwell,* 506 U.S. 364 (1993). "The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and in judging prejudice, and the likelihood of a different outcome, [a] defendant has no entitlement to the luck of a lawless decision maker." *Id.* (citations and quotations omitted).

When a defendant is requesting resentencing based on potential misinformation, it must be clear that the information was inaccurate and that the inaccurate information was relied on in establishing the sentence. *See United States v. Tucker*, 404 U.S. 443 (1972) (determining that a sentencing judge's reliance on prior criminal convictions that were unconstitutional was unjust

and, therefore, prejudiced the proceeding and the sentence had to be reconsidered). Petitioner suggests that the Seventh Circuit's decision in *Lechner v. Frank* applies, holding that misinformation is relied on when it is given "explicit attention," or "specific consideration" in determining the sentence. 341 F. 3d 635, 639 (7th Cir. 2003). *Lechner*, however, goes on to clarify that even when misinformation is specifically referenced in a pre-sentence report, the reference can simply serve as a warning sign of "undesirable" behavior, such as this petitioner's history of fraud, and does not unfairly prejudice the defense. *Id.* The Sixth Circuit has held that a sentencing court may include a wide range of information in determining the sentence, "[s]o long as the evidence in the presentence report bears some minimal indicia of reliability in respect of defendant's rights to due process." *United States v. Silverman*, 976 F. 2d 1502, 1511 (6th Cir. 1992); D.E. 2: Memorandum in Support of Petition, at 5. Additionally, a sentence is procedurally reasonable when the judge considers both the sentencing guidelines and the factors in 18 U.S.C § 3553(a). *United States v. Borho,* 485 F. 3d 904, 908 (6th Cir. 2007).

Petitioner has not shown that Mr. Holley's performance rendered the outcome of his proceeding unjust, because even if defense counsel had objected to the "six-month gap" reference or to the defendant having actually being arrested *after* passing the check, not *while* passing the check, the outcome of the proceedings likely would not have been altered. In the instant case, the Court uses the following main points in determining the sentence: petitioner pled guilty to escaping from a halfway house; petitioner's escape showed "disrespect and a lack of trust in the judicial system"; any potential job placement and paralegal work did not match up with being shot at for no reason; and petitioner escaped from halfway house custody in September 2015 and remained a fugitive until he was arrested on another matter. SHTR at 54 - 56. Additionally, the Court stated that it was likely Strategic 1 was not a real company, so combined with petitioner's record of

fraudulent activity, including cashing a potentially fraudulent check from this shell company in Indiana months after escaping, it was difficult to believe this act was not also fraudulent. SHTR at 57. Moreover, the eight-month sentence imposed was below the guideline sentence of 12 to 18 months and almost half of the recommended sentence of 14 months. PSR at 23. Whether or not the check from petitioner's May 26, 2016, arrest was in fact fraudulent, or issued two-months versus six-months prior to cashing the check, it is clear the Court was using any information about petitioner's previous arrests as information showing there was likely other incidents of fraud committed while on escape status. SHTR at 36. Therefore, because the Court relied on numerous reasons, other than the date of the check and the timing of the Indiana arrest to issue a sentence below the guideline range, petitioner's claim that Mr. Holley's failure to object to the erroneous information fails to show how it prejudiced the defense or created an unjust proceeding.

## III. McWhorter's Medical Condition Does Not Warrant Resentencing.

Petitioner's claim that his sentence should be reconsidered in light of his desired access to insurance-based health care should be denied. According to BOP records and personnel, petitioner will be released on July 21, 2017, to begin his three years of supervised release, and he will no longer be considered an incarcerated person.[3] Petitioner will then have access to any previous options of medical care through Gilead Support Path or other means. While both Mr. Holley and petitioner stated in the Sentencing Hearing that insurance-based medical services had not been available to petitioner in the past, both Mr. Holley and petitioner also stated that Gilead Support Group previously accepted petitioner, during his escape status. SHTR at 21, 39.

---

[3] On June 15, 2017, an employee of the U.S. Attorney's office spoke with BOP personnel and was told that James C. McWhorter, register number 18549-075, will be released July 21, 2017, to begin his three-year term of supervised release. Upon release, he will no longer be considered an incarcerated person, barring any extenuating circumstance.

Furthermore, petitioner's request to be released immediately has already been heard and denied by this Court. During sentencing, McWhorter supported this request by asserting that he would be unable to access the specific insurance-based medical care he desires. For this Court to reverse course at this time is not appropriate. As the Court noted in the Sentencing Hearing, Hepatitis C is a serious issue in prisons all around the state of Tennessee, and granting this motion due to petitioner's desire to receive health insurance would have a broad effect on other sick individuals seeking the same access to health benefits. Additionally, the Court noted that petitioner had shown that he had good resources to get the need medication upon release. SHTR at 60.

Moreover, the Court previously considered petitioner's medical condition in determining the downward variance from the Guideline Range, so petitioner should not be re-heard on this matter. SHTR at 61. *See United States v. Zerilli*, 187 Fed. App'x 529, 523 (6th Cir. 2006) (holding there should be no resentencing when the district court has obviously referenced the defendant's medical condition or health when issuing an initial downward departure from the Guideline Range). Specifically, the Court recognized that both cirrhosis of the liver and liver cancer are potential consequences of delayed treatment, and, in light of petitioner's medical condition, the Court imposed a lower-than-guideline-range sentence. SHTR at 61. The Court already granted a downward variance, imposing an eight-month sentence instead of a sentence within the 12 to 18 month guideline range. SHTR at 61. Furthermore, the Court stated that while sensitive to petitioner's Hepatitis C diagnosis, a condition brought on by petitioner's own illegal behavior could not "trump everything else." SHTR at 59. Therefore, resentencing based on petitioner's medical condition, when given consideration in the initial proceedings, should be denied.

## Conclusion

McWhorter's grounds for relief are not supported by the record, and, in fact are contradicted by information in the record. McWhorter clearly had effective assistance of counsel in that Mr. Holley's assistance was not deficient and did not prejudice McWhorter's defense. Thus, petitioner's claims fail, and he is not entitled to relief under 28 U.S.C. §2255 on these grounds. For the reasons stated above, the United States respectfully requests that this Court deny petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

Respectfully submitted,

JACK SMITH
Acting United States Attorney
Middle District of Tennessee

*/s/ S. Carran Daughtrey*
S. Carran Daughtrey
Assistant United States Attorney
110 Ninth Avenue South, Ste. A-961
Nashville, Tennessee 37203

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by mail on

James C. McWhorter
Inmate #18549-075
Three Rivers Federal Correctional Institution
P.O. Box 4200
Three Rivers, TX 78071

on this, the 15th day of June, 2017.

*/s/ S. Carran Daughtrey*
S. Carran Daughtrey