UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JAMES C. McWHORTER, | ) | |
| --- | --- | --- |
| Movant, | ) | |
| v. | ) | No. 3:17-cv-00637 |
| | ) | Judge Trauger |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Pending before the court is *pro se* movant James C. McWhorter's motion under 28 U.S.C. § 2255 (Doc. No. 1) to vacate, set aside, or correct a sentence previously imposed by this court. *See United States v. McWhorter*, No. 3:16-cr-00162, Doc. No. 32 (M.D. Tenn. Dec. 20, 2016) [hereinafter cited as "Crim. Doc. No. ___"]. The respondent filed a response. (Doc. No. 12.) For the following reasons, the movant's motion will be denied and this action will be dismissed.

**I.    Background**

In a previous criminal case in this court, a jury convicted the movant of five offenses relating to the production or possession of fraudulent identification documents. *United States v. McWhorter*, No. 3:07-cr-00159-1, Doc. No. 387 (M.D. Tenn. Nov. 20, 2009). There, on June 28, 2010, former Judge Robert L. Echols sentenced the movant to a total term of 124 months' imprisonment, to be followed by 3 years of supervised release. *Id.*, Doc. No. 491 (M.D. Tenn. June 28, 2010). On June 16, 2015, the Bureau of Prisons placed the movant in the custody of Diersen Charities, a residential reentry center, to serve the remainder of his term of imprisonment. *McWhorter*, No. 3:16-cr-00162, Presentence Report ¶¶ 4, 26 [hereinafter cited as "PSR ___"].[1]

---

[1] The movant does not dispute the accuracy of the PSR. (Doc. No. 2 at 2.)

The movant reported to Diersen that he was working as a paralegal at Strategic 1 Consulting, LLC ("Strategic"). (PSR ¶¶ 5, 56.) According to the movant's counsel at the sentencing hearing, Strategic was a business "set up by [the movant's] friends so he could operate as an independent contractor." (Crim. Doc. No. 34 at 13–14.) On the morning of September 7, 2015, the movant checked out of Diersen to go to work and did not return. (Crim. Doc. No. 1 at 1–2; PSR ¶¶ 5, 26, 45, 52.)

The movant later sent a letter to the probation office explaining why he left Diersen. (PSR ¶ 45.) He stated that, after he had breakfast with his best friend, Eugene Nesbitt, on the morning of September 7, someone shot at them. (*Id.*) The movant panicked, and they left Nashville to go to Baltimore, Maryland. (*Id.*) On the evening of October 3, 2015 in Baltimore, Nesbitt was shot and killed. (*Id.*) Three days later, the movant and his girlfriend moved to South Bend, Indiana. (*Id.*)

While in South Bend, the movant had a payroll check from Strategic in the amount of $1,459.96, dated November 23, 2015.[2] (Crim. Doc. No. 34 at 30; PSR ¶ 36.) On November 25, 2015, he cashed this check for its full amount. (Crim. Doc. No. 34 at 6–7.) The check was later returned. (*Id.* at 7.) At some point, an information out of the St. Joseph County Superior Court in South Bend charged the movant with check deception[3] for cashing this check. (PSR ¶¶ 5, 11, 26, 36, 45.) He was arrested for this charge on May 27, 2016.[4] (*Id.* ¶ 36.)

On August 10, 2016, an indictment in this court charged the movant with escaping from federal custody at Diersen Charities on September 7, 2015, in violation of 18 U.S.C. § 751. (Crim.

---

[2] Neither the government nor the movant dispute the date on the check. (*Id.*; Doc. No. 12 at 2.)

[3] Under Indiana's check deception statute, it is a crime to "knowingly or intentionally issue[] or deliver[] a check . . . to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business." Ind. Code § 35-43-5-5(a).

[4] The PSR states that the movant was arrested on either May 25, 2016 (PSR ¶¶ 5, 26, 45), or May 27, 2016 (*id.* ¶ 36). This distinction is not relevant to the issue before the court. Nonetheless, the court presumes the correct date is May 27, 2016, because it is consistent with the movant's sentencing hearing testimony. (Crim. Doc. No. 34 at 39.)

Doc. No. 1.) The next day, the movant's check deception charge in the St. Joseph County Superior Court was dismissed. (PSR ¶ 36.) On September 2, 2016, the court appointed an attorney to represent the movant. (Crim. Doc. No. 8.) One week later, the movant filed a motion requesting the court set a hearing for him to plead guilty. (Crim. Doc. No. 11.) The court accepted his open guilty plea on September 19, 2016. (Crim. Doc. No. 17; PSR ¶¶ 2, 64.)

On December 16, 2016, the court sentenced the movant to a term of 8 months' imprisonment, consecutive with any remaining term of imprisonment in his other federal criminal case in this court, to be followed by 3 years of supervised release. (Crim. Doc. No. 30.) The movant did not file a direct appeal, and the court received his timely *pro se* motion under 28 U.S.C. § 2255 (Doc. No. 1) in March 2017.

**II.     Analysis**

The movant asserts a single claim for ineffective assistance of counsel. (Doc. No. 1 at 4.) He argues that counsel was ineffective during the sentencing hearing in failing to object to two "erroneous facts" the court relied on to justify the imposed sentence. (*Id.*; Doc. No. 2 at 4–8.) To prevail on an ineffective-assistance claim, the movant bears the burden of showing, first, "that his counsel provided deficient performance," and second, that the "the deficient performance prejudiced [his] defense." *Sylvester v. United States*, 868 F.3d 503, 509–10 (6th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To make either showing in the context of the movant's particular claim—failure to object to "erroneous facts" relied upon at sentencing—the movant must also show that the challenged information "is materially false or unreliable," and that it "actually served as the basis for the sentence." *United States v. Adams*, 873 F.3d 512, 517–18 (6th Cir. 2017) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)).

Here, the movant challenges the following two "erroneous facts" related to his arrest for check deception in South Bend, Indiana: (1) he was arrested while cashing the check; and (2) the check was six months old when he cashed it. (Doc. No. 1 at 4; Doc. No. 2 at 1–5.) The movant is correct in pointing out that these two propositions are not accurate. In fact, (1) he was arrested *for* cashing the check, not *while* cashing the check, and (2) the check was *two days* old when he cashed it, not *six months* old. The court nonetheless concludes that the movant is not entitled to relief because he has not demonstrated that the court based his sentence on these relatively minor factors. Further, and for substantially similar reasons, the movant has not demonstrated the prejudice necessary to prevail on his ineffective-assistance claim.

To determine whether erroneous information actually served as the basis for a sentence, the court analyzes "whether 'the sentence . . . might have been different [in the absence of that information].'" *United States v. Wilson*, 614 F.3d 219, 224 n.3 (6th Cir. 2010) (quoting *United States v. Tucker*, 404 U.S. 443, 448 (1972)). In doing so, the court considers whether the information was "an important factor in determining [the] sentence." *Adams*, 873 F.3d at 518 (internal citations and quotations omitted).

To be clear as to the timeline of events relevant to the movant's claim, the movant was in custody at Diersen Charities from June 16, 2015 to September 7, 2015. During that time, he performed paralegal work and was paid through Strategic 1 Consulting, LLC, a business established by the movant's friends so that he could operate as an independent contractor while he resided at Diersen. The movant did not perform any paralegal work while he was on escape status after he left Diersen on September 7. Yet, on November 23, 2015—about two-and-a-half months later—Strategic issued him a payroll check in the amount of $1,459.96. He cashed this check on November 25, 2015, and he was arrested for check deception based on cashing this check about

six months later, on May 27, 2016. The check deception charge was dismissed one day after the federal indictment issued in the criminal case underlying this action.

In considering these events at the sentencing hearing, this court first noted that the movant was arrested on a "fraud charge" for cashing the Strategic payroll check "months after he left the halfway house." (Crim. Doc. No. 34 at 17–18.) These statements are accurate, and they undermine the movant's argument that his sentence was based on the two challenged "erroneous facts." Later, as the movant's counsel argued that the government had not demonstrated that the Strategic payroll check was actually fraudulent, the court stated that it did not "really care about that issue." (*Id.* at 35.) This statement reflects that the particular details of the movant's check-deception arrest were not an important factor in determining the movant's sentence.

In announcing the sentence, the court expressed its belief that the circumstances surrounding the Strategic payroll check were "very shady," although the court explicitly did not find that the movant committed a crime by cashing it. (*Id.* at 58.) To be sure, in doing so, the court misstated the timing of the arrest and issue date of the check. (*See id.* at 56 ("And then after his friend was murdered, then [the movant] fled to Indiana, where he was arrested many months later cashing a check . . . ."); *id.* at 57 ("So he is caught and arrested in Indiana when he tries to cash a check that is, what, six months old on this shell corporation."); *id.* at 58 ("This was an old check issued on a company that I suspect wasn't even in existence because it apparently was only in existence to pay Mr. McWhorter, but it was issued six months ago.").)

Nonetheless, the court's concern regarding the Strategic payroll check was not just because of these details, but also because of Strategic's origin and the movant's criminal record. The court explained that it was skeptical of Strategic because the company was specifically established to circumvent the rules of the halfway house by allowing the movant to operate as an independent

5

contractor. (*Id.* at 56–58.) And the court explained that these events were troubling because the movant had a record of creating fraudulent identification documents and "paper hanging." (*Id.* at 58.)

Moreover, the court considered many factors other than the movant's Indiana check-deception arrest in imposing sentence, as required by 18 U.S.C. § 3553(a). Specifically, the court analyzed the nature and circumstances of the escape offense by summarizing the movant's whereabouts from his placement at Diersen in June 2015 through his arrest in Indiana in May 2016. (*Id.* at 54–55.) The court then noted this was "not the most serious offense that comes before the court," but that it reflected "bad judgment and disrespect of the judicial system." (*Id.*) The court also noted that the movant's stated reason for leaving the halfway house—panic after being shot at—did not explain why he remained a fugitive for months. (*Id.* at 55–56.)

The court also considered the movant's history and characteristics. It summarized his criminal and familial history, and commended him on procuring a legitimate job offer. (*Id.* at 59–61.) The characteristics given the greatest weight by the court, however, were the movant's medical issues. (*Id.* 59–61.) As the court explained at the sentencing hearing, the movant's sentencing guideline range was 12 to 18 months. (*Id.* at 3–4, 55.) Yet, "because of his medical condition," the court imposed a below-guideline sentence of 8 months. (*Id.* at 61.)

For all of these reasons, the two misstated details regarding the movant's Indiana check-deception arrest were not "important factors" in his sentence, "such that his sentence may have been different in their absence." *See Adams*, 873 F.3d at 518 (finding that a sentencing court did not rely upon two of three contested propositions); s*ee also United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006) ("When a district court considers the relevant 3553(a) factors in-depth

and reaches its determination that the appropriate sentence varies outside the advisory guidelines range, we are very reluctant to find the sentence unreasonable.").

And for these same reasons, the movant also fails to satisfy the second prong of his ineffective-assistance claim. That is, even assuming without deciding that the movant's counsel was deficient in failing to object to the two challenged misstatements, the movant must prove that these errors prejudiced him. *Sylvester*, 868 F.3d at 511 (citing *Strickland*, 466 U.S. at 694). To do so, the movant must "show by 'a reasonable probability that, but for [these errors], the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Although this *prejudice* standard is not identical to *reliance-on-erroneous-information* standard set forth above, application of the facts in this case to both standards leads to the same result. In short, based on all of the court's considerations in imposing sentence, there is not a reasonable probability that the sentence would have been different if the movant's counsel objected to the two misstatements regarding the movant's Indiana check-deception arrest.

## III. Conclusion

For these reasons, the movant is not entitled to an evidentiary hearing, and his claim for ineffective assistance of counsel fails. Accordingly, the movant's motion under 28 U.S.C. § 2255 (Doc. No. 1) will be denied and this action will be dismissed.

Rule 11(a) of the Rules Governing Section 2255 Cases requires that a district court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court finds that the movant has not satisfied this standard, and will therefore deny a certificate of appealability.

An appropriate order is filed herewith.

It is so ORDERED.

ENTER this 12th day of December 2018.

_____
ALETA A. TRAUGER
United States District Judge